**MAEA, UELE, LETELE P. and FAIALAGA all of Faleniu, Plaintiffs**

**v.**

**M. ALAPETI of Faleniu, Defendant**

No. 20-1947

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Name: "Magalei" of Faleniu]

July 2, 1947

ARTHUR A. MORROW, *Chief Justice;* NUA, *District Judge;* and APE, *District Judge.*

## DECISION

Heard at Fagatogo June 24, 1947.
Counsel for Maea, Save; for Letele Pouli, Sianava; for Alapeti, Eti.

MORROW, *Chief Justice.*

M. Alapeti filed his application with the Registrar of Titles to have his name registered as the holder of the matai name Magalei. Maea, Uele, Letele Pouli and Faialaga each filed an objection to such proposed registration and became candidates respectively for the name. Later Uele and Faialaga withdrew their objections and ceased to be candidates.

At the hearing it appeared from the evidence that each of the three remaining candidates had at least ¾ Samoan blood, had resided within American Samoa continuously for five years preceding the vacancy in the title Magalei, lived with Samoans as a Samoan and was born in American Samoa. We conclude, therefore, that each of them meets the requirements of Sec. 926 of the American Samoan Code so as to be eligible to succeed to a matai title.

Section 933 of the Code provides that:

"In the trial of Matai name cases, the High Court shall be guided by the following in the priority listed:

1. The wish of the majority or plurality of the family.

2. The forecefulness, [sic] character, personality and capacity for leadership of the candidate.

3. The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail.

4. The value of the holder of the Matai name to the Government of American Samoa."

We shall first consider the wishes of the Magalei family with respect to each of the candidates. Each filed a petition

signed by various members of the family in support of his candidacy. There were 87 names on the petition of Letele, 51 on Alapeti's petition and 26 on Maea's. On Alapeti's petition there were names of 7 persons claimed by Maea not to be members of the Magalei family. Letele made a similar claim with respect to 9 names on the same petition. Alapeti claimed that the names of children 12 or 13 years of age on Maea's petition should not be counted on the ground that children of that age are not old enough to have an intelligent wish as to who shall be the matai of the family. There are three such names on the petition. An examination of Alapeti's petition fails to reveal a signer as young as 13 years. Letele also objected to three names on Maea's petition, but on what ground it does not appear. Maea made no objection to any of the names on Letele's petition. Alapeti objected to the signers on Letele's petition of the age of 14 years or under. There are two signers who gave their ages as 14 on this petition and 12 who gave their age as 13 or under.

█ It is not necessary for the court to determine what age a child must have attained before it can have an intelligent wish as to who shall be the matai of the family. However, we think that a child 14 years of age is old enough to have an intelligent wish with respect to this matter. Such a child is prima facie capable of having a criminal intent. I Bishop, Cr. Law (9 Ed.) Sec. 368. "When the age of fourteen arrives, full criminal responsibility, at common law, attaches." I Wharton, Crim. Law (12th Ed.) Sec. 86. At the common law a boy 14 years of age could consent to his marriage so that it would be binding. Madden on Domestic Relations, p. 28. And a girl 12 years of age was deemed old enough to consent to a binding marriage. Id. Certainly if, at the common law, a child 14 years of age is prima facie old enough to have a criminal intent and to enter into a valid marriage, then a child of such age,

257

in the absence of evidence to the contrary, is of sufficient age to have an intelligent wish as to who shall be the matai of its family.

If it be admitted (we do not decide the matter) that a child of 13 or under is not capable of entertaining such a wish, there are still 75 eligible names on Letele's petition. If we count all 26 names on Maea's petition including those objected to and all 51 on Alapeti's, including those objected to, Letele lacks only 2 of having as many backers for the name Magalei as the other two candidates put together. He has almost three times as many backers as Maea and almost a half more than Alapeti. Letele has a plurality of the family in his favor. If we count out the three children of 13 or under on Maea's petition then Maea and Alapeti together have only 74 backers while the exclusion of the children of 13 or under on Letele's petition leaves him with 75 names, or one more than the other two candidates put together.

It is apparent that Letele prevails over the other two candidates on the issue of the "wish of the majority or plurality of the family."

We shall next consider the "forcefulness, character, personality and leadership" of the candidates.

With respect to his having been in jail for crime, Alapeti, who is 43 years of age, testified: "First I was in jail for forgery when I was a young kid and second I was in jail for holding a bush knife and then the wife of the son of Maea jerked and I hurt her hands." Alapeti further testified that he sold taros and bananas at the Samoan market on the Naval Station and to the Samoan Hospital; that in May his sales amounted to $49.45 and in June to $75.65. Alapeti served the Magalei until his death in 1945. At various times Alapeti has worked as a laborer at the Naval Station, having shifted from one job to another. He got as far as the 6th grade in school. He has plantations.

Maea, who is 56 years old, has worked off and on for Public Works as a carpenter for 30 years. At the present time he is working his plantations. He testified: "No, I did not come over and sell taro in the market but I sent my daughter and son to sell taro. One of my daughters when she came back home gave me $10.00, another one $5.00 and my son gave me $7.00." Maea got as far as the 6th grade in school. Apparently Maea had trouble with his matai Magalei Siausulu for he did not render service to such Magalei for over five years prior to the latter's death. He did not furnish any food for his funeral "Because in those days" as he testified, "him and me were not a good mood." Nor did he furnish a fine mat at the funeral of Magalei Siausulu. Maea has lived in Faleniu for 20 years. Faleniu is the village to which the Magalei title is attached. Undoubtedly the members of the Magalei family in Faleniu know Maea quite well. It is significant that only 5 of the 26 members of the family signing his petition are from Faleniu.

Letele, who is 48 years old, testified that he got to the 4th grade in school. He has plantations and sells taro and bananas. He was the leader of a gang which worked at the air-base during the war. Letele sells about $100.00 worth of bananas and taros to the Samoan Hospital each month, and an additional $20.00 to $30.00 worth at the market. He rendered service to the late Magalei Siausulu.

In view of the evidence it is the opinion of the court that Letele prevails over both Alapeti and Maea on the issue of "forcefulness, character, personality and leadership."

The next matter for consideration is that of hereditary right. Alapeti is the blood son of Magalei Siausulu. Thus one half of his blood is Magalei blood. Maea is the grandson of Magalei Maea Faatafuna. One quarter of his blood is Magalei blood. Letele is the grandson of Magalei Tauai. One quarter of his blood is Magalei blood. It is clear that

Alapeti prevails over the other two candidates with respect to the issue of hereditary right.

 The final matter for consideration under Sec. 933 of the Code is "The value of the holder of the Matai name to the Government of American Samoa." It is in the interest of the Government that the affairs of each matai family be handled well. The better such affairs are handled the better it is for the Government. It is to the interest of each member of a Samoan family to have a good matai. The family members are in a good position to know who will be the best man for the place. They know the candidates and ordinarily know them well. If 50 members of a family want candidate A and only 25 members want candidate B, that in itself is a strong indication that A is the better man for the place. Of course it is not conclusive that A will be a better matai than B, but it is evidence that he will be.

Again the value of a man to his Government may be measured to a considerable extent by the quantity of goods produced by him. The country that has the greatest per capita production of goods is normally the best off economically. A man who produces $100.00 worth of taro a month is more valuable to his Government, everything else being equal, than the man who produces only $25.00 worth. Again a man who has committed crimes and been sent to jail, everything else being equal, is not as valuable to his Government as the man who has not. In the light of the evidence and the foregoing considerations, the court is of the opinion that Letele prevails over both Maea and Alapeti on the issue of "The value of the holder of the Matai name to the Government of American Samoa."

 It thus appears that Letele prevails over both Alapeti and Maea on the first, second and fourth issues while Alapeti prevails over Letele and Maea on the third issue.

In view of the law as set out in Sec. 933 of the Code and quoted above, it follows that Letele is entitled to be regis-

tered as the Magalei and the Registrar of Titles will be so advised.

Costs in the sum of $12.50 are hereby assessed against Alapeti and a like amount against Maea, the same to be paid within 15 days.